LINCOLN MEDICAL COLLEGE, APPELLEE, V. W. A. POYNTER
ET AL., APPELLANTS.

FILED MAY 16, 1900.   No. 11,230.

1. **Practice of Medicine:** STATE BOARD OF HEALTH: CERTIFICATE TO
PHYSICIANS: OBJECT OF LAW. The law governing the practice
of medicine in this state and authorizing the state board of
health to issue certificates to physicians and surgeons, is a
police measure. It was not intended, by that act, to protect
medical schools or medical practitioners from competition in
business.

2. **Incorporated Medical College:** RIGHT OF ACTION. An incorporated
medical college can not maintain an action to restrain the state
board of health from issuing a certificate as required by article
1, chapter 55, Compiled Statutes, 1899, licensing a physician and
surgeon to practice medicine in this state.

3. **Action of State Board:** INJUNCTION. After the state board of
health has placed a construction upon the law under which it
is authorized to issue certificates to physicians and surgeons
(Compiled Statutes, 1899, ch. 55, art. 1), injunction will not lie
to annul its decision and restrain the issuance of a certificate
in accordance with such decision.

APPEAL from the district court of Lancaster county.
Heard below before FROST, J. Reversed.

Constantine J. Smyth, Attorney General, and Willis D.
Oldham, Deputy, for appellants:

The police power of the state, as vested in the legislature, is defined in Powell v. Commonwealth, 114 Pa. St., 265.

The act of a lawmaking power interfering with the
right of a citizen to follow his or her avocation, is always
a questionable exercise of legislative power. Ex parte
Whitwell, 98 Cal., 73; 35 Am. St. Rep., 156.

The testimony in this case discloses that the board had
entered judgment in Dr. Drasky's favor prior to the com-
mencement of this action by ordering and directing a cer-
tificate to issue to him to practice medicine. The princi-
ple is a fundamental one that injunction will not issue
to prevent the doing of an act which has already been
performed.

*Doyle & Stone* and *W. G. Hastings,* for intervener, B. W. Drasky.

*Strode & Strode* and *C. S. Rainbolt, contra:*

Mandamus is likened to injunction with respect to the propriety of its issuance against executive officers or boards. *Gaines v. Thompson,* 7 Wall., 352; High, Injunctions, 3d ed., sec. 1310.

Referring now to the authority of the board of health to grant, or to refuse, a certificate, let us quote the language of a recent decision of this court in a mandamus case: "It may be likened unto the authority which may be exercised by an officer in the approval or non-approval of a required bond or undertaking. The right of examination, and of passing on the financial sufficiency of the instrument, and the sureties thereon, may be or exist and in it there may be somewhat of the exercise of the discretion,—a judicial weighing of the matter, if you please; yet in some instances, where the form and substance of the bond are without question, it has been said mandamus will lie to secure an approval." *Jackson v. State,* 57 Nebr., 188.

We think, therefore, an injunction will lie to restrain the board from issuing a certificate. *Normand v. Otoe County,* 8 Nebr., 18; *Morris v. Merrell,* 44 Nebr., 423; *City of Omaha v. Megeath,* 46 Nebr., 502. We do not contend that the law was enacted for the benefit of plaintiff or any other corporation or individual. But we do contend that every person, either natural or artificial, has an interest in every valid law upon our statute books; each must comply with the law's requirements, and each is entitled to the law's protection.

SULLIVAN, J.

The district court of Lancaster county, at the instance of the Lincoln Medical College of Cotner University, rendered a decree perpetually enjoining the members of the state board of health, and the secretaries of said board,

from issuing to Brestislaw W. Drasky a certificate authorizing him to engage in the practice of medicine and surgery in this state. It appears that the board had, before the commencement of the action, determined, upon proofs submitted to it, that Drasky was a graduate of a legally chartered medical college in good standing and entitled to the statutory credential. The trial court decided that the medical college at which Drasky was graduated did not meet the requirements of chapter 55, Compiled Statutes, 1899, and that the evidence submitted to the board of health did not justify the conclusion reached and decision made by that body. Of the questions discussed in the briefs of counsel, we shall consider only two. On behalf of appellants it is insisted that the Lincoln Medical College has no legal interest in the matter in controversy and is, therefore, not entitled to maintain the suit. The only interest asserted by plaintiff is thus stated in its petition:

"6. If said defendants are permitted to thus disregard the law and issue to said Drasky a certificate to practice medicine in this state and thereby establish a precedent and advertise to the world that they have disregarded the law and will continue to do so, it will cause students to leave plaintiff's Medical College and attend some other college of a lower standard where the degree of M. D. is granted upon the attendance of only three courses of lectures and will prevent prospective students from matriculating and buying scholarships in plaintiff's said college, and will have the effect to cause plaintiff to either discontinue its business or lower its standard and will cause plaintiff great financial loss and damage and will work great and irreparable injury to this plaintiff and plaintiff has no adequate remedy at law."

Fairly paraphrased the averment quoted declares that the action of the defendants in Drasky's case will induce medical students to matriculate at institutions having a lower standard of education than that established by the plaintiff, and that the plaintiff will be thereby exposed

to unfair competition. The purpose of the law is not to protect medical schools or medical practitioners from competition in business; it is a police measure designed, as. was said in *State v. Buswell*, 40 Nebr., 159, to prevent imposition upon the afflicted by quacks and pretenders. The plaintiff does not stand within the shelter of the act and hence can claim nothing under it. It is, we. suppose, the theory of the law that one who has, as a medical student, attended a certain number of lectures during a period of four years is a less formidable menace to the lives and health of people, who may be induced to employ him as a physician or surgeon, than is a person who has attended the same number of lectures during a period of three years; but however that may be, it is quite certain the plaintiff has no legal interest in the matter; it is not charged with the duty of enforcing the law, and can not be permitted to assume that function, even from motives of benevolence; it bears no commission from the state authorizing it to take up the cudgels *pro bono publico*. It being, as counsel for defendants have pointed out, "an artificial person devoid of a tangible body, without a soul, an immune from the pains, aches and organic troubles which can be cured or intensified by medical treatment, can look with perfect complacency upon the practice of medicine by all members of the profession, realizing that however numerous the monuments erected to the want of skill on the part of the practitioner, it can never be numbered among the victims." But if plaintiff could rightfully appeal to the law to protect it from business competitors, it has not shown in this case that there exists the relation of cause and effect between the act complained of and the injury apprehended. It does not claim that loss of patronage will result from the delivery of the certificate to Drasky, which is the act enjoined; but rather that it will suffer by the decision of the board, an act already completed, accomplished and beyond recall. The substance of plaintiff's contention is simply this, that the state board of health has placed a con-

struction on the law regulating the practice of medicine which is prejudicial to its interests and which ought to receive judicial condemnation. The office of an injunction is to prevent action; it can not reach back and undo what has been already done. The decision of the board has been made; it is a past act; and, whether right or wrong, it can not be annulled by injunction. The threatened injury is obviously not the proximate consequence of the act enjoined.ᵖ The judgment is reversed and the cause dismissed.

REVERSED AND DISMISSED.